UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/7/2025
```

-------------------------------------------------------------------- X
                      :
JUAN DOMINGUEZ,              :
                      :
           Plaintiff,   :       1:24-cv-7119-GHW
                      :
      -v-             :      MEMORANDUM
                      :      OPINION & ORDER
DEANDRE S. THOMPSON, *et al.*,  :
                      :
          Defendants.  :
                      :
-------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

    This is a personal injury case resulting from a car crash in the Bronx—an important case for the parties involved, but not the most complex. The Court established a discovery schedule that ultimately provided Defendants half a year after the initial pretrial conference to serve disclosures for their expert witnesses. After the deadline passed, Defendants asked for it to be extended. But Defendants provided no justification for their failure to meet the deadline, other than their counsel's inattention to the discovery schedule. The Court found that Defendants had not established good cause for the requested extension of the discovery schedule and denied their request.

    In this motion for reconsideration, Defendants' counsel argues that her neglect of the discovery deadlines was excusable. Given the clarity of the governing scheduling order and the Court's instructions to the parties, it was not. Because Defendants have failed to meet the high bar for a motion for reconsideration and have failed to show good cause for the Court to modify the scheduling order, Defendants' motion for reconsideration is DENIED.

## I.    BACKGROUND

    Plaintiff Juan Dominguez filed this action in New York State Supreme Court on May 7, 2024, alleging that Defendants injured him in a traffic accident. Dkt. No. 1. Defendants, through their counsel, Kalliopi P. Kousis, removed the action to this Court on September 19, 2024 because

the parties were diverse.  Dkt. No. 1.  The Court promptly scheduled a case management

conference.  Dkt. No. 3.

      The case management conference was held on November 14, 2024.  Dzhamshed Mannonov

of the Law Office of Spektor & Associates appeared for the plaintiff; Ms. Kousis appeared for all

defendants.  At the beginning of the conference, the Court heard from both parties about the case in

general.  The Court then began a discussion of the discovery process in the case.  In its introductory

remarks to frame that portion of the parties' discussion, the Court said the following:

> My goal today is to set a series of deadlines that the parties can meet if you
> work diligently.  That's important to me because I expect to require the parties to
> meet whatever deadlines we set today.  If you have any concerns about your ability
> to meet the deadlines that are set forth in the case management plan and scheduling
> order that was sent to the Court, this is the time to raise it.  I'm happy to change
> these deadlines if needed, in order to make sure that you have sufficient time to
> complete the work required to litigate this case.  But you should keep in mind that
> these are real deadlines that I will be including in the case management plan and
> scheduling order.  And that as a result, you should let me know now if we need to
> change any of the proposed deadlines that are set forth in the proposed case
> management and scheduling order so that you can have confidence that you'll be
> able to do the work within these time periods.

Dkt. No. 27-1 ("IPTC Tr.") at 5:20–6:10.  With that prompt, the parties described the nature of the

discovery that they anticipated.  The Court asked Defendants' counsel for her proposal for the

presentation of expert disclosures.  Ms. Kousis responded as follows:

> Your Honor, defendant[]s propose that they're going to be hiring a
> biomechanical expert, an orthopedist to dispute the damages in this case, as well as a
> board certified radiologist.  I anticipate that I will have those expert opinions in order
> shortly thereafter plaintiff's deposition.  If I need to put a timeline on it, I would say,
> your Honor, 30 to 45 days if I need to issue reports after plaintiff issues his expert
> reports.

*Id.* at 13:11–19.  The Court granted counsel's request.  *Id.* at 13:20–21 ("THE COURT:  Thank you.

That's fine.  That's more than is the norm, but I'm happy to accommodate it . . . .").

      The deadlines that the Court established were consistent with the parties' requests:  the

parties were provided four months to complete fact discovery, and an additional two months to

complete expert discovery.  *See* Dkt. No. 11 (the "CMP").  The case management plan required that the parties provide their expert disclosures under Federal Rule of Civil Procedure 26(a)(2) by specified dates.  *Id.*

After establishing the schedule for completion of discovery, the Court spoke with the parties at length regarding its expectations for compliance with the scheduling order.  IPTC Tr. at 16:3–8 ("THE COURT:  What I'm about to say largely just emphasizes the point I made earlier, which is that the case management plan and scheduling order contains real deadlines and it contains real deadlines for completion of discovery.  So first, let me just say that again.  These are real deadlines.  They're not notional guideposts.").  The Court emphasized that point several times, noting that, again the case management plan "requires that discovery be completed by the dates that are specified. . . .  They are deadlines for completion of discovery.  They are not dates on which or after which we will begin litigation about discovery."  *Id.* at 17:9–13.

In its discussion of the importance of complying with the discovery deadline, the Court spoke at length regarding the significance of the deadlines for expert disclosures included in the case management plan and scheduling order.  *Id.* at 18:7–22:8.  Among other things, the Court told the parties that if they failed to provide all of their expert disclosures timely, "you should not expect that you will be permitted to have that expert provide any testimony or evidence in the case."  *Id.* at 19:21–24.  And the Court emphasized that the parties were responsible for making appropriate arrangements so that their expert disclosures would be available by the deadlines.

> The last thing that I want to say about the deadlines in paragraph 8C is that these are the deadlines for your experts.  If you need to make arrangements with your doctors or preferred healthcare providers so that they can meet these deadlines now, you should do it. . . .
>
> In New York City, in this area, there are lots and lots of doctors and you have lots and lots of time in this case before these disclosures are due.  If you need to do work in order to obtain an expert report and other disclosures by these deadlines, you should do so promptly so that you can meet the deadlines.  You should not expect that I will grant a request to extend these deadlines because your

> preferred healthcare provider is not available.  You have many, many, many months
> in which to organize appropriate disclosures from an expert.  And so I hope that I'm
> being exceptionally clear in communicating to you that I will not care if you are
> unable to get a doctor to do this at the last minute.  That is because you don't need
> to do it at the last minute.  You have ample time to begin to do that work starting
> from now.

*Id.* at 20:8–21:5.

The Court reminded the parties that a scheduling order entered under Federal Rule of Civil

Procedure 16 could only be modified for "good cause."  And the Court explained that in order to

show good cause to support any extension, they would be expected to show that they had acted with

diligence.

> You should not expect that I will grant extensions of these deadlines.  I will
> only do so if the parties show good cause for an extension of the deadlines.  At the
> heart of a showing of good cause is a showing of diligence.  What that should mean
> for you, among other things, is that I will not grant an extension of time just because
> the party asks for one.  Instead, you should expect that I will ask you to show me
> that you have been diligently litigating the case.  If you have not been diligently
> litigating the case, if I conclude you have not been diligently litigating the case, you
> should not expect that I will find good cause to extend these deadlines, and the
> consequence of your lassitude will be that you go to trial with less information than
> you would otherwise like.

> So my guidance to you is you make professional judgments about the
> amount of resources that you want to invest in the case, and expect to live with the
> consequences of those decisions.  If you choose not to focus on this case[,] you
> should understand that the consequence of that will be that you will end up not
> having as much information as you would otherwise have when going to trial.

*Id.* at 22:12–23:6.

After completing its discussion of the requirements of the case management plan and

scheduling order with the parties, the Court asked counsel to confirm that they understood them.

They said that they did.

> THE COURT:  Counsel for defendants, any questions from you about the
> nature or scope of your obligations under the case management plan and scheduling
> order?

> MS. KOUSIS:  No, your Honor.

*Id.* at 25:18–21.

On March 13, 2025, Ms. Kousis wrote to the Court requesting an extension of the discovery deadlines. Dkt. Nos. 12, 13. The parties made the request because "Defendants are awaiting medical records in response to Plaintiff's executed medical authorizations and depositions must be completed once the records are received. Defendants are working diligently to secure these medical records."[1] The Court scheduled a conference to discuss the request because it contained no information about the parties' diligence in pursuing the records prior to the deadline. Dkt. No. 14.

At the outset of the conference, the Court explained its concerns regarding the request made in Defendants' letter.

> I want to hear from you about this. I'm not going to review in full the lengthy discussion that we had at our prior conference. That is, the initial pretrial conference in this case. But at that conference, I engaged in an extensive colloquy with the parties to explain that the deadlines in the case management plan and scheduling order were real deadlines, deadlines that you could not disregard, deadlines that you were required to work to meet diligently lest I deny requested extensions of time.

> I made it clear to you that the fact that the parties wanted an extension of time by itself would not suffice for the Court to grant an extension of time. I just say that to put my initial view of the parties' letter in context. Namely, I provided the parties clear guidance that these are real deadlines, and the letter presented to the Court says that the reason for this is that, "the defendants are awaiting medical records." Awaiting records requested with no suggestion of any diligence in following up to get them does not by itself tell me that the parties have been diligent. It suggests a message in the bottle approach, where authorizations were sent out and there was not necessarily follow-up to obtain the records so that you can meet the deadlines.

> So, the letter itself made me concerned about whether the parties had taken to heart my lengthy explanation of what the deadlines in the case, the scheduling order in this case meant. So let me hear from each of the parties.

---

[1] The Court had raised the possibility of delays in obtaining such medical records during the initial pretrial conference. Counsel for Defendants reassured the Court that the initial schedule provided them sufficient time to do that work. IPTC Tr. at 7:16–8:5 ("THE COURT: What about medical records, counsel for defendant? I've heard from some that they can be time consuming to get them from primary care or other physicians or hospitals. Is that a factor we should be taking into account as we schedule discovery? MS KOUSIS: Well, again, your Honor, that depends on when we receive the executed medical authorizations from plaintiff's offices. . . . So in the event we receive the executed authorizations by the end of November, I'm hopeful we'll be able to compile the medical records within 30 days of those authorizations.").

Dkt. No. 26-2 ("Disc. Tr.") at 3:12–4:12. The parties then provided their justifications for the request.

The Court granted the request but told the parties that the request was "marginal" for several reasons. First, because it was untimely: the Court highlighted that such requests for extensions of the deadlines in the case management plan needed to be made two business days prior to the date sought to be extended. *Id.* at 6:15–19. "It's also marginal in terms of the showing of good cause." *Id.* at 7:6–7. The Court took the opportunity to tell the parties "that you're not to expect that you're going to get another extension of time." *Id.* at 7:17–18. "I told you this at length, as counsel for defendant said, in my strict requirements for compliance with these deadlines, that if you choose not to spend the time on this case, the consequence of that will be that you will go to trial or summary judgment with fewer facts." *Id.* at 7:18–22.

Given the context of this motion for reconsideration, the Court's following remarks require quotation at length.

> So it is your professional responsibility to do the work needed to meet these . . . guidelines. If you get to the point where you're going to summary judgment or trial without the facts because you failed to do that work, that will be an issue for you to take up with your client and anyone else who may be interested in the lassitude with which you approached the case. It should not, you will expect, cause me to extend these deadlines.

> I encourage you to look back at the transcript of the prior conference. I'm not going to repeat everything I said there, but I remind you in particular my comments regarding the requirements for expert discovery in the case, including the requirement that 100 percent of expert disclosures be provided by the date specified in what will be the dates in 8(c) after I've extended them. If you fail to meet those deadlines again, the default rule is that your expert will not be permitted to provide evidence or testimony in the case.

> In other words, if other cases can work on cruise control using the assistance of staff without active input of counsel and it does not have adverse consequences, I recommend that you take this case off of cruise control. If you fail to do the work needed to fully litigate this case within this time period, you should expect we will go to summary judgment and trial. You will just not have the necessary information, and you and your client will have to live with the consequences of your failure to do

the work within the time period allotted here, which is more than sufficient for
counsel acting diligently.

So, again, I'm not going to repeat everything that I said in the prior
conference. I strongly encourage you to order the transcript and review it
yourselves. You should not expect a further extension of these deadlines, and if you
need additional resources in order to meet them, I encourage you to task them to do
the work with you so that you can meet the deadlines. . . .

So I hope all of that is clear, as I understand it was from the prior
conference. I'll grant the extension here nonetheless. I'm going to encourage the
parties to comply in the future. Future noncompliance[,] you should expect[,] will
not be permitted.

*Id.* at 7:25–9:20.

As the parties requested, the Court extended all of the case deadlines. As a result, the

deadline for Plaintiff's expert disclosures became May 14, 2025; Defendants' expert disclosures were

due on June 11, 2025, with expert depositions to be completed by July 9, 2025. Dkt. No. 15. The

Court scheduled a status conference to occur on July 18, 2025—shortly after the scheduled close of

discovery—and ordered that the parties submit a status letter by July 11, 2025. *Id.* The Court later

advanced those deadlines to July 8, and July 1, 2025, respectively. Dkt. No. 18.

It was against this backdrop that the Court received the Defendant's July 2, 2025 letter from

Ms. Kousis. Dkt. No. 19 ("July 2 Ltr."). The letter contained a short description of the nature of

the case. Then Ms. Kousis wrote the following:

To date, the deposition of Plaintiff Dominguez and Defendant Thompson
have been conducted. Next, the parties have served post-deposition discovery
demands that are pending. Plaintiff Dominguez has appeared for his orthopedic
IME with Dr. Ferriter and Defendants have exchanged Dr. Ferriter's report.
Defendants have retained a biomechanical expert to opine that the force of this
accident did not cause the Plaintiff's alleged injuries. Finally, Plaintiff's counsel
intends to file a biomechanical rebuttal expert.

*Id.* The letter did not acknowledge the fact that the parties had missed the deadlines for expert

disclosures, and that the deadline for completion of all expert discovery was just a week away. It

made no request to extend the deadlines. The letter contained no reference to the scheduling order

at all.  Nor did it contain the suite of information required by the Court's scheduling order.

As a consequence, the Court issued an order on July 7, 2025 adjourning the conference to a later date.  The order directed the following:

> Prior to the conference, the parties are directed to do the following:  First, the parties are directed to review the transcripts of the initial pretrial conference held on November 14, 2024 and the transcript of the discovery conference held on March 18, 2025.  Second, after reviewing those transcripts, the parties are directed to submit an updated version of their pre-conference letter.  The July 2, 2025 joint status letter does not contain all of the information required pursuant to the case management plan and scheduling order.  Dkt. No. 19.  The updated version of the joint pre-conference letter must contain that information and should be informed by the parties' review of the transcripts of the prior conferences.

Dkt. No. 20.  When issuing the July 7, 2025 order, the Court expected that the parties' review of the transcripts of the prior conferences would allow them to focus any requests for an extension of time mindful of the Court's comments regarding the need for them to support any request for an extension of time with a showing of diligence.

Ms. Kousis filed a responsive letter on July 11, 2025.  Dkt. No. 21 (the "Status Letter").  In that letter, Ms. Kousis described the general nature of the case.  Then she wrote the following:  "The parties reviewed the transcripts of the initial pretrial conference held on November 14, 2024 and the transcript of the discovery conference held on March 18, 2025, respectively."  *Id.*  This statement, the Court later discovered, was false.

The parties' failure to review those transcripts may explain the wan approach to the remainder of Ms. Kousis's letter.

> The parties have served post-deposition discovery demands in which the parties are working on their respective responses.

> The expert discovery deadline of July 9, 2025, has expired, as of the date of this letter.  There has been one previous request for an extension of time.  The parties advised the Court in their joint status letter of July 2, 2025 of the pending biomechanical expert reports.  The parties respectfully request an extension of expert discovery for good cause in order to finalize and serve their respective biomechanical expert reports.  Plaintiff consents to the expert discovery extension.  The parties propose a new expert discovery end date of September 9, 2025.  The Plaintiff

Dominguez has appeared for his orthopedic IME with Dr. Ferriter and Defendants have exchanged Dr. Ferriter's report.

Status Letter.  The letter informed the Court that the parties had not completed either fact or expert discovery by the relevant deadlines.  For the first time—after the deadlines had passed—the parties requested an extension of the deadline for completion of expert discovery.  But they provided no justification for the request, other than a conclusory assertion that the request was "for good cause."  In particular, they provided no explanation for the defendants' failure to meet the deadlines, or a description of any diligence undertaken to meet the deadlines.

The Court held the scheduled status conference on July 15, 2025.  The Court began the conference by reminding the parties of the case management plan and scheduling order and the Court's remarks at the prior scheduling conferences.  As a result, the Court told the parties that its understanding was that discovery was closed.  Dkt. No. 26-3 ("Ext. Tr.") at 4:2–5.  Plaintiff's counsel informed the Court that he was "fine with discovery being closed."  *Id.* at 4:15.

Ms. Kousis had a different view.  Early in her remarks, she told the Court that "Defendants did request a timely request to extend expert discovery . . . ."  *Id.* at 5:9–11.  Because no timely request had been made to extend the deadline for expert disclosures, the Court asked if Defendants had produced their expert disclosures.  Ms. Kousis responded that they had not "because the report has not been finalized . . . ."  *Id.* at 5:16–17.  Because Ms. Kousis's representation that she had made a timely request to extend the deadlines clashed with the requirements of the case management plan, the Court then engaged in the following colloquy with her:

> THE COURT:  So, take a look at the order, counsel.  Counsel, you represented to me that you've reviewed the transcripts.  You've reviewed the transcripts, right?
>
> [COUNSEL FOR DEFENDANTS]:  Yes, your Honor.
>
> THE COURT:  Thank you.  So, you are certifying, as you already have by signing the letter, that you reviewed both of the transcripts, and you're confirming that now as a member of the bar subject to professional discipline should you be misleading the Court?

[COUNSEL FOR DEFENDANTS]:  Yes, your Honor.

*Id.* at 5:18–6:3.  Notwithstanding the Court's warning to Ms. Kousis that a false statement to the Court could result in disciplinary action against her, these statements too, were false.

Ms. Kousis explained that she had failed to obtain the expert report timely because she understood that the deadline was in the middle of July.  *Id.* at 6:9–8:4.  The following discussion revealed that her understanding lacked any foundation in the text of the order, which clearly identified the deadline as June 11, 2025.  Ms. Kousis advanced several additional arguments in support of her request for a further extension.  First, she argued that "plaintiff's counsel was aware from the beginning – and, also, we advised the Court – that we anticipated on serving a . . . biomechanical expert . . . .  It is no surprise to plaintiff's counsel or to the Court that defendants were planning to serve this report."  *Id.* at 8:24–9:4.  Second, she argued that the delay resulted from a delay in the scheduling of the deposition of the driver of the defendant's vehicle.  *Id.* at 9:5–7.  And third, she argued that it would be "highly prejudicial" if the defendants were not allowed to serve the report.  *Id.* at 9:8–14.

Perhaps because she had not read the transcripts of the prior proceedings, Ms. Kousis offered no information about whether she had been diligent in obtaining the report within the scheduled period.  She did not explain why—in the eight months after identifying her desire to obtain a biomechanical expert during the initial pretrial conference—she had failed to meet the deadline.

The Court denied Ms. Kousis's request for an extension of time in an oral opinion.  During its oral opinion, the Court quoted at length from the transcript of the initial pretrial conference to remind Ms. Kousis that the deadlines—in particular those for expert disclosures—had been clearly established.  *Id.* at 9:19–11:10.  The Court reminded the parties that they had affirmed their understanding of the requirements of the order.  *Id.* at 12:1–12.  The Court also reminded the parties

of the content of the March conference, "during which, as you know from having reported that you reviewed the transcript, I renewed my exhortations regarding your requirement to comply with the discovery deadlines as extended." *Id.* at 12:15–18. "I noted concern about the diligence being applied by the parties, but gave the parties another opportunity to complete the work.  At the end of that conference, I told the parties, among other things, that they should not expect further extensions of the deadlines." *Id.* at 12:23–13:3.

The Court then denied the motion.  The Court first noted that the request to extend the deadline for expert disclosures was untimely.  *Id.* at 13:23–24.  The scheduling order required that any request for an extension of time "be made no less than 2 business days prior to the expiration of the date sought to be extended."  Dkt. No. 11 at 4–5.  Defendants' request for an extension of their expert disclosure deadline came weeks after the expiration of the deadline.

The Court then found that Ms. Kousis's sole explanation for her failure to meet the deadline—"a misunderstanding of the scheduling order"—was not good cause.

> So, given that the justification proffered by counsel for defendant for defendants' failure to meet the deadlines is an apparent failure to read the case management plan and scheduling order or to take into account the clear instructions of the Court during our prior conferences, I cannot find good cause for the request that I extend the deadlines.  Misreading or misunderstanding an order is not good cause.  As I said to the parties during the initial pretrial conference, "So my guidance to you is that you make professional judgments about the amount of resources that you want to invest in the case and expect to live with the consequences of those decisions.  If you choose not to focus on this case, you should understand that the consequence of that will be that you will end up not having as much information as you would otherwise have when going to trial.  The consequence of you not doing the needed work will not be that I will give you more of it," meaning in that instance time.

> So, here, no showing of diligence has been made by defendants' counsel.  Counsel rests the failure to complete this work merely on, I think, an unsupportable misinterpretation of the Court's scheduling orders, and, therefore, I do not find good cause to extend the discovery schedule in the case.

Ext. Tr. at 14:19–15:16.  The Court then scheduled the case for trial.

On July 29, 2025, Defendants filed this motion for reconsideration.  Dkt. No. 23 (notice of

motion); Dkt. No. 24 ("Mem.").  The motion requested that the Court grant the relief under Federal

Rules of Civil Procedure "59 and 60 because of their 'mistake, inadvertence, surprise, or excusable

neglect' and inconsistent outcomes as another reason justifying relief."  Mem. at 1.  Defendants

argued that they "excusably if mistakenly relied on plaintiff's assent to the actual timetable of

disclosing biomechanical experts . . . ."  *Id.*  The description of the factual background of the motion

omitted any reference to the text of the transcripts from the initial pretrial conference, interim status

conference, or the conference during which the Court issued its oral ruling.

In the motion, Defendants framed their request as arising under Federal Rule of Civil

Procedure 60(b)(1) and argued that Defendants' counsel's conduct constituted "excusable neglect."

*Id.* at 5 ("Under that standard:  'Factors to be considered in evaluating excusable neglect include "[1]

the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on

judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable

control of the movant, and [4] whether the movant acted in good faith."'").  Using this framework,

Defendants argued that the third and fourth factors weighed in Defendants favor because

Defendants "reasonably . . . relied on plaintiff's assent to the delayed exchange . . . ," and "excusably

believed the Court was aware the parties were in agreement to this as the delayed biomechanist

report was raised in both *joint* letters to the Court."  *Id.* at 6–7 (emphasis in original).

Defendants then argued that the "length of delay" was going to be minimal because it would

only require the exchange of two sets of expert reports, and associated depositions.  *Id.* at 7.

Defendants argued that the biomechanical expert was important to their case, given the nature of

the accident.  *Id.* at 8.  At the same time, they argued that late disclosure would not be prejudicial to

Plaintiff.  *Id.*

Defendants then invoked Rule 60(b)(6) to argue that exceptional circumstances existed to

modify the Court's order.  That exceptional circumstance derived from the existence of a parallel

state case involving the same traffic accident as this case.  In that case, defense counsel expected to meet the expert disclosure requirements "but this means as things currently stand the biomechanists will testify to the physics of the collision and its ability (or not) to cause injury with plaintiff's passenger but not with plaintiff himself."  *Id.* at 10.

The Court issued an order in response to Defendant's motion for reconsideration the next day.  In that order, the Court asked for supplemental briefing regarding the applicability of Rule 59 and 60 to a motion for reconsideration of an interlocutory discovery order.  Dkt. No. 25.  The Court made that request because the motion made no reference to this district's rules regarding motions for reconsideration, or the "good cause" standard that governs modifications to orders issued under Rule 16.  Because the transcripts of the various conferences were germane to resolution of the motion—and the motion made no reference to any aspect of those conferences—the Court also directed that counsel file copies of the transcripts.  The Court ordered that counsel for defendants file the transcripts of the November 14, 2024 and March 18, 2025 conferences no later than August 4, 2025.  The Court also directed counsel to file the transcript of the July 15, 2025 conference.  But because counsel had not previously represented that she had read that transcript, the Court directed that it be filed by a later date—by August 8, 2025.  *Id.*

On August 6, 2025, two days after the August 4, 2025 deadline, counsel for Defendants filed a letter stating that she had not yet received the transcript of the November 14, 2024 conference from the court reporters' office.  *See* Dkt. No. 26.  Counsel for Defendants attached a receipt to the letter.  That receipt showed that counsel for Defendant had requested the transcripts of the November 14, 2024 and the March 18, 2025 conference on July 31, 2025.  *See* Dkt. No. 26-1.

On August 8, 2025, Defendants filed the supplemental memorandum of law requested by the Court.  Dkt. No. 28 ("Supp. Mem.").  In it, Defendants recognized that founding their motion on Rules 59(e) and 60 was questionable, because those rules refer to relief from judgments and

"final" orders. But they also noted the "conflicting precedent" in this Circuit regarding whether Rule 60 applied to the reconsideration of interim orders. *Id.* at 2.

In their August 8, 2025 supplemental brief, Defendants took the opportunity to "provide supplemental briefing on the standard governing the motion for reconsideration." *Id.* at 7. This was Defendants' first reference to the legal standard applicable to a motion for reconsideration. Now, with the transcript of the July 15, 2025 conference in hand, Defendants argued that factors other than their lack of diligence should be considered in evaluating their request to reopen discovery. They pointed to a six-factor test applied by some district courts to evaluate whether an extension of discovery deadlines were warranted, citing *Iowa Public Employees' Retirement System v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 17-cv-6221, 2025 WL 1276505 (S.D.N.Y. May 2, 2025). Defendants argued that "consideration of the other five factors might reasonably alter the Court's conclusion in light of the additional circumstances presented here . . . ." Supp. Mem. at 8. But Defendants did not present their analysis of any of those factors or why they militated in favor of granting the requested relief. *Id.* Instead, Defendants pointed to the Second Circuit's summary opinion in *Colbert v. Rio Tinto PLC*, 824 F. App'x. 5 (2d Cir. 2020) as "instructive."[2]

Plaintiff's counsel filed a brief affidavit in opposition to the motion to reconsider on August 15, 2025. Dkt. No. 30 ("Opp."). In his affidavit, counsel affirmed that "Defense counsel first reached out to the undersigned about Defendants' desire to extend the expert deadlines on July 2, 2025." *Id.* ¶ 2. The affidavit pointed out that the outreach took place well after the disclosure deadlines, undermining defense counsel's argument that her failure to disclose her expert disclosures timely was a result of reliance on the plaintiff's agreement. Plaintiff's counsel stated that his position was only that, were the Court to reopen discovery to permit Defendants to provide untimely

---

[2] The portion of the summary order that Defendants cite in support of their argument relates to the practice of deeming a claim to be abandoned when a party does not address it in response to a motion to dismiss, not the modification of a case management plan entered under Rule 16.

disclosures, Plaintiff wished to have the opportunity to serve a rebuttal report. *Id.* ¶ 3. "To be very clear, Plaintiff unequivocally opposes Defendant's request to extend any discovery deadline." *Id.* ¶ 5. The motion was fully briefed when Defendants filed their reply brief on August 22, 2025. Dkt. No. 31.

On August 13, 2025, while the motion to reconsider was being briefed, the Court issued an order in response to what appeared to be written and oral misrepresentations to the Court by Ms. Kousis. Dkt. No. 29 (the "August Order"). In the August Order, the Court recited Ms. Kousis's written and oral statements to the Court that she had reviewed the transcripts of the relevant conferences as directed. In the order, the Court wrote that:

> The Court cannot reconcile counsel for Defendants' written and oral representations to the Court that she had reviewed the transcripts of the November 14, 2024 and March 18, 2025 transcripts as of July 10, 2025 and July 15, 2025 with the content of her August 6, 2025 letter and its attachments. Counsel for Defendants represented to the Court that she had reviewed the November 14, 2024 and March 18, 2025 transcripts prior to the date on which the order receipt shows she ordered them. Her August 6, 2025 letter states that she did not have the November 14, 2024 transcript as of August 6, 2025, which was after the dates on which she represented that she had reviewed it. And counsel for Defendants' delay in docketing the transcript of the March 18, 2025 conference suggests that she did not have it on August 4, 2025, the date on which its filing was due.

August Order at 2–3. The Court invited counsel to provide any information that she might wish to share with the Court before it issued an order to show cause why sanctions should not be entered against her as a result of the potential misrepresentations. *Id.* at 3.

In response to the August Order, Ms. Kousis wrote to the Court. Dkt. No. 32. In her letter, she admitted that both the written and oral statements to the Court were "misstatements." Counsel acknowledged that "greater precision should have been exercised." *Id.* However, she described the misrepresentations as "an isolated error, not made in bad faith, recklessness, or disregard of the Court's authority." *Id.* at 1. In response, the Court informed counsel that it did not intend to take further action with respect to the misrepresentations at this time and counseled her to "take greater

care in any future representations made to a court." Dkt. No. 33.

## II.    LEGAL STANDARD

### A.    Motion for Reconsideration

Motions for reconsideration are governed by Local Rule 6.3, which provides that the moving party shall set forth "the matters or controlling decisions which the moving party believes the court has overlooked."  "Reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly."  *Ortega v. Mutt*, No. 14-cv-9703 (JGK), 2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017) (quoting *Anwar v. Fairfield Greenwich Ltd.*, 800 F. Supp. 2d 571, 572 (S.D.N.Y. 2011)). As such, reconsideration should be granted only when the moving party "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 185 (S.D.N.Y. 2016) (internal quotation marks omitted) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)).

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Bartlett v. Tribeca Lending Corp.*, No. 18-cv-10279, 2019 WL 1595656, at *1 (S.D.N.Y. Apr. 12, 2019) (noting that a party moving for reconsideration of a previous order must demonstrate that the Court overlooked "controlling law or factual matters" that had been previously put before it).  "A motion to reconsider will not be granted where the moving party is merely trying to relitigate an already decided issue," *Padilla v. Maersk Line, Ltd.*, 636 F. Supp. 2d 256, 258–59 (S.D.N.Y. 2009), because "reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  *R.F.M.A.S., Inc. v.*

*Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).

Ultimately, "[t]he decision to grant or deny a motion for reconsideration rests within 'the sound

discretion of the district court.'" *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 352 F. Supp. 3d

242, 246 (S.D.N.Y. 2019) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

This motion for reconsideration is not, as Defendants argue, governed by Federal Rule of

Civil Procedure 59(e) or 60.  Starting with Rule 59(e):  that rule permits parties to file motions to

"alter or amend a judgment."  *See* Fed. R. Civ. P. 59(e).  The Court's oral order denying a request for

a modification of a Rule 16 scheduling order is not a judgment.  On its face, Rule 59(e) does not

apply to Defendants' motion.

Nor is Rule 60(b) the proper avenue for reconsideration here.  The Rule provides that a

district court may grant a party relief from certain "final" orders:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding.  On
> motion and just terms, the court may relieve a party or its legal representative from a
> final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect; . . . ; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1), 60(b)(6).  The order that Defendants request that the Court reconsider is

not a "final" order:  it was an interlocutory order that the Court may revisit without recourse to the

limiting strictures of Rule 60(b).

The Supreme Court recently discussed the meaning of the term "final" as it appears in Rule

60(b).  "In 1946, when the term 'final' first appeared in the Rule, legal dictionaries defined 'final' to

mean '[d]efinitive; terminating; completed; conclusive; last.'"  *Waetzig v. Halliburton Energy Services,*

*Inc.*, 604 U.S. 305, 312 (2025) (quoting Black's Law Dictionary 779 (3d ed. 1933)).

> The term "final" was therefore intended to exclude "interlocutory
> judgments" from the reach of the Rule.  And, as the Committee Notes explain, that
> exclusion makes sense.  Rule 60(b) relief from interlocutory judgments is
> unnecessary because, with respect to those judgments, "a rehearing may be sought at

any time before [the] final decree, provided due diligence be employed and a revision
be otherwise consonant with equity." In other words, a court presiding over a case is
always capable of revising an interlocutory ruling, so long as a revision is "consonant
with equity." The word "final" underscores that Rule 60(b) does not infringe that
inherent and distinct power.

> After a case is finally terminated, however, a court no longer presides, and a
> party can no longer seek a "rehearing" on an interlocutory judgment. It is at that
> point that a court's power under Rule 60(b) kicks in, permitting the court to look
> back at the "final" act in a case and provide relief from that act when appropriate.

*Id.* at 312–13 (internal citations omitted).

The Court recognizes that, as Defendants argue, several courts have applied the Rule 60(b)

framework when evaluating whether to reconsider an interlocutory order. However, the Supreme

Court's opinion in *Waetzig* underscores the validity of the thoughtful analysis of this issue presented

in opinions such as that of Judge Edward R. Korman in the Eastern District of New York in *Vicuna

v. O.P. Schuman & Sons, Inc.*, 298 F. Supp. 3d 419 (E.D.N.Y. 2017). Because the order that is the

subject of the motion for reconsideration is not a "final" order, the Court takes up the motion to

reconsider its decision unbounded by the strictures of Rule 60(b).

The Court has the authority to reconsider its order under Federal Rule of Civil Procedure

54(b), which authorizes a court to reconsider all interlocutory orders. *See United States v. LoRusso*, 695

F.2d 45, 53 (2d Cir. 1982) (stating that "[a] district court has the inherent power to reconsider and

modify its interlocutory orders prior to the entry of judgment"). Rule 54(b) provides that an "order

or other decision, however designated, that adjudicates fewer than all the claims or the rights and

liabilities of fewer than all the parties does not end the action as to any of the claims or parties and

*may be revised at any time* before the entry of a judgment . . . ." Fed. R. Civ. P. 54(b) (emphasis added);

*see also Parmar v. Jeetish Imports, Inc.*, 180 F.3d 401, 402 (2d Cir. 1999) ("All interlocutory orders remain

subject to modification or adjustment prior to the entry of a final judgment adjudicating the claims

to which they pertain."); 11 Fed. Prac. & Proc. Civ. § 2852, 292–93 (3d ed.) ("[T]he power of a court

to modify an interlocutory judgment or order at any time prior to final judgment remains unchanged

and is not limited by the provisions of Rule 60(b).").  However, the Court's analysis is based on the law applicable to a motion to reconsider an interlocutory order, not a motion to vacate a "final" order under Rule 60(b).

### B.    Extensions of Discovery Under Rule 16

The discovery schedule that Defendants seek to extend was governed by a case management plan and scheduling order entered by the Court.  Under Federal Rule of Civil Procedure 16, "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "A district court has broad discretion in deciding whether good cause exists to amend the scheduling order and reopen discovery."  *Young v. Sw. Airlines Co.*, No. 14-cv-1940 (LDH)(RLM), 2016 WL 3257008, at *2 (E.D.N.Y. May 4, 2016) (quotation omitted).  But the "good cause requirement" is "mandatory."  *In re Adelphia Comm'ns. Corp.*, 452 B.R. 484, 497 (Bankr. S.D.N.Y. 2011) (quotation omitted).  Thus, the Court's "discretion to grant . . . relief" under Rule 16(b)(4) is limited by "the good cause requirement."  *Rupp v. City of Buffalo*, 328 F.R.D. 69, 71 (W.D.N.Y. 2018) (quotation omitted).

"Rule 16 does not set forth a definition of 'good cause.'"  *Rubik's Brand Ltd. v. Flambeau, Inc.*, 329 F.R.D. 55, 58 (S.D.N.Y. 2019).  But "a finding of 'good cause' depends on the diligence of the moving party."  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *see also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243, 244 (2d Cir. 2007).  "The party must show that, despite its having exercised diligence, the applicable deadline set in the court's scheduling order could not reasonably have been met."  *Liverpool v. City of New York*, No. 18-cv-1354 (PAE)(BCM), 2020 WL 3057466, at *2 (S.D.N.Y. June 9, 2020) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05-cv-3749 (KMW)(DCF), 2009 WL 3467756, at *2 (S.D.N.Y. Oct. 28, 2009)) (internal quotation marks and alterations omitted).

"Further, an attorney's inadvertence or oversight is not good cause for the purposes of Rule

16." *Russell v. Aid to Developmentally Disabled, Inc.*, 2016 WL 11735374, at *3 (E.D.N.Y. 2016); *see also*,

*Bracy v. New York*, 2001 WL 1550666, at *1 (S.D.N.Y. 2001) ("If oversight alone constituted 'good

cause' to modify a scheduling order, all scheduling orders would quickly become meaningless.").[3]

## III.    DISCUSSION

Defendants' request for reconsideration is denied because Defendants have identified no

legal precedent or issue of fact that the Court overlooked in ruling on their initial request.

Moreover, as detailed here, the Court continues to believe that Defendants motion should be denied

because Defendants' counsel has not shown that she acted diligently in the pursuit of the discovery,

and because her justifications for her failure are unpersuasive—particularly in light of the Court's

extended comments to the parties regarding the nature of their obligations under the case

management plan and scheduling order, and her failure to comply with the Court's instructions.

Defendants were not diligent in seeking the requested discovery.  Defendants noted their

desire to retain a biomechanical expert during the initial pretrial conference in November 2024.  But

Defendants have presented no information to the Court regarding the efforts undertaken to obtain

the report.  They offered none when they initially made the request, and they have not supplemented

the record through their motion for reconsideration.  Lacking any evidence or proffer from

Defendants regarding their efforts to meet the deadlines in the scheduling order, the Court cannot

conclude that Defendants have been diligent.

Rather than providing evidence of diligence, Defendants' briefing attempts to justify its

---

[3] This is how a leading treatise describes how courts apply the good cause standard in the context of evaluating motions to modify a discovery schedule: "Experience shows that many more motions seeking modification of scheduling orders are denied than are granted, however.  Thus, for example, the good-cause standard will not be satisfied if the court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule. Attorney neglect or inadvertence will not constitute good cause supporting modification.  A party's assertion that further discovery is needed, without more, will not suffice.  Similarly, the failure to explain satisfactorily delays that led to the need for modification will result in a refusal to modify the order.  The court also will consider whether previous extensions already have been granted, as well as whether, given the delay, the opposing party would be prejudiced by the proposed modification."  6A Fed. Prac. & Proc. Civ. § 1522.2 (3d ed.).

absence.  The justifications they offer are not persuasive for several reasons.  First, Defendants'

counsel argued to the Court that she misunderstood the deadlines in the case management plan to

permit the disclosures in mid-July.  Assuming that representation to be true, it is not a proper

justification, as the order was clearly written.  An oversight by counsel does not justify failure to

comply with a scheduling order—that conclusion is even more justified in this case, given the

Court's repeated instructions to counsel for Defendants regarding her obligation to comply with the

case management plan and scheduling order.

Second, Defendants' counsel argued that her failure to comply was justified by her purported

reliance on Plaintiff's counsel's agreement to modify the scheduling order.  But counsel for Plaintiff

submitted a sworn affidavit attesting that Defendants' counsel did not approach him regarding a

proposed modification of the scheduling order until July 2, 2025.  That date was *after* Defendants

missed the deadline for their expert disclosures.  Counsel for Defendants did not submit an affidavit

contesting Plaintiff's counsel's assertion.  Defendants' counsel cannot pin her failure to meet a June

deadline on a communication that she had with Plaintiff's counsel in July.

Finally, Defendants' counsel cannot find justification for her failure in the fact that the Court

and Plaintiffs' counsel were aware that Defendants wanted to designate a biomechanical expert.

Again, Defendants identified the need for a biomechanical expert in November 2024.  The

scheduling order was developed with that need in mind.  The fact that the need for the expert was

identified for the Court and Plaintiff during the initial pretrial conference does not justify an

extension of time.  Instead, it underscores Defendants' lack of diligence:  the need to do this work

did not sneak up on them.  They were aware of the need to obtain that expert's disclosures

throughout the entire discovery period but failed to take any steps to obtain them that have been

revealed to the Court.  Defendants' lack of diligence does not permit the Court to find good cause

for a modification of the scheduling order.

The Court was aware at the time that it issued the oral opinion that denying Defendants the opportunity to pursue the expert discovery would have an adverse impact on Defendants' case. The Court weighed the prejudice to Defendants of denying the extension when it ruled on the request. But the Court's view remains that, as it explained at the initial pretrial conference: Defendants should "expect to live with the consequences of [their] decisions. If you choose not to focus on this case[,] you should understand that the consequence of that will be that you will end up not having as much information as you would otherwise have when going to trial." IPTC Tr. at 22:12–23:6.

Defendants invite the Court to re-analyze their request using the six-factor test employed by some courts in this district when evaluating whether good cause exists to modify a discovery schedule. *See, e.g., Iowa Public Employees' Retirement System v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 17-cv-6221, 2025 WL 1276505 (S.D.N.Y. May 2, 2025). The Court is not obligated to do so because Defendants have not met the high bar required to support a motion for reconsideration. Moreover, "[w]hile these factors are instructive, courts do not understand them to be mandatory." *Id.* at *2; s*ee also Saray Dokum ve Madeni Aksam Sanayi Turizm A.S. v. MTS Logistics Inc.*, 335 F.R.D. 50, 52 (S.D.N.Y. 2020) (noting that "[i]n some situations, courts do not apply these factors and we do not believe their application to be mandatory. Nonetheless, we will consider them to the extent we deem them pertinent."). Nonetheless, the Court evaluates those factors below.

Some district courts have applied six factors in analyzing motions to re-open discovery: "[i] whether trial is imminent, [ii] whether the request is opposed, [iii] whether the non-moving party would be prejudiced, [iv] whether the moving party was diligent in obtaining discovery within the guidelines established by the court, [v] the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and [vi] the likelihood that the discovery will lead to relevant evidence." *Iowa Public Employees' Retirement System*, 2025 WL 1276505, at *2 (quoting *Pharmacy, Inc. v. Am. Pharm. Partners, Inc.*, No. 05-cv-776 (DRH) (AKT), 2008 WL 4415263, at *3

(E.D.N.Y. Sept. 24, 2008) (collecting cases)).

All but the last of these factors weigh against a grant of Defendants' request. First, a trial has been scheduled in this case. The parties' pretrial submissions are due on December 10, 2025. Dkt. No. 22. Were the Court to reopen discovery at this point, Defendants would still require time to complete their expert's Rule 26(a) disclosures. As already described, Defendants have not yet provided a specific timeline for completion of that work. Plaintiff would be required to retain an expert to rebut Defendants' expert, and Plaintiff's expert would need time to complete their Rule 26(a) disclosures. Then the Court would be required to provide the parties the opportunity to depose their respective experts. Although the deadline for *Daubert* motions under the case management plan and scheduling order has passed, the Court would be required to grant leave for a request to file such motions with respect to the newly disclosed experts. So, to grant Defendants' request at this stage would have a substantial impact on the deadlines for pretrial submissions in this case and the resolution of the case as a whole.

The second and third factors also weigh against Defendants' request. Plaintiff unequivocally opposes the application. And Plaintiff would be substantially prejudiced were the Court to grant the belated request. Plaintiff would be required to retain an expert and engage in additional expert discovery—all with the attendant financial cost and risk of delay.

The fourth factor—whether Defendants were diligent—weighs heavily against granting the request, as described at length above. Defendants were not diligent. The excuses offered by their counsel for her failure to do the needed work timely do not constitute "good cause."

The fifth factor—the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court—also weighs heavily against Defendants' request. That is, again, because the need for this discovery was not only foreseeable, but foreseen. Defendants were aware of their desire to retain such an expert from the outset of discovery, yet failed to do so

without substantial justification.

Only the sixth of these factors weighs in favor of Defendants' request. The Court understands that the proposed expert testimony is relevant to the case. Defendants expect that it will support their theory that the accident could not have caused the injuries of which Plaintiff complains. Lacking evidence from a biomechanical expert, the finder of fact will evaluate that defense on the basis of the testimony and evidence from fact witnesses and the parties' medical experts. On balance, however, with five of the six factors weighing against Defendants' request to reopen discovery, the request should not be granted.

## IV.    CONCLUSION

"Experience shows that many more motions seeking modification of scheduling orders are denied than are granted . . . ." 6A Fed. Prac. & Proc. Civ. § 1522.2 (3d ed.). Defendants' failure to meet the deadlines in this case may well be, as Defendants argue, the consequence of neglect. Particularly given Defendants' disregard for the Court's instructions, however, that neglect is not excusable. And it does not constitute good cause.

For the reasons stated above, Defendants' motion for reconsideration, Dkt. No. 23, is DENIED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 23.

SO ORDERED.

Dated:  October 7, 2025
        New York, New York

_____
GREGORY H. WOODS
United States District Judge

24